# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 19-00207-01-CR-W-HFS |
| Richard K. James, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are the MOTION TO SUPPRESS EVIDENCE (Doc. #19) filed on December 17, 2019, by defendant Richard K. James ("James"). On July 30, 2020, the undersigned held an evidentiary hearing on James' motion. James was present and was represented by his counsel, Jedrick Burgos. The government was represented by Assistant United States Attorney Robert Smith. At the evidentiary hearing, two witnesses testified – Gabriel Coale and Chad Stetzler, both employed with the Independence (Mo.) Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Dash camera video |
| Gov't. #2 | Photograph of fanny pack |
| Gov't. #3 | Photograph of open passenger door |
| Gov't. #4 | Photograph of handgun magazine |
| Gov't. #5 | Photograph of passenger compartment |
| Gov't. #6 | Photograph of passenger door |
| Gov't. #7 | Photograph of handgun in passenger door pocket |
| Gov't. #8 | Photograph of handgun |
| Gov't. #9 | Photograph of passenger compartment |
| Gov't. #10 | Photograph of passenger side floorboard |
| Gov't. #11 | Warrants |
| Gov't. #12 | Booking card |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. On November 17, 2016, Gabriel Coale[1] and Chad Stetzler were patrol officers assigned to the Independence (Mo.) Police Department. Tr. at 9-10, 13, 39-40.

2. On November 17, 2016, Officer Coale and Officer Stetzler were partnered on car patrol when they observed a Chevy Silverado pickup truck being operated near the intersection of Short and 4th Street in Independence, Missouri. Tr. at 10, 13, 40.

3. The officers determined that the license plates on the Silverado were actually registered to a Kia automobile. Tr. at 10.

4. Based on the improper license plates, Officer Coale and Officer Stetzler initiated a traffic stop of the Silverado. Tr. at 10-11.

5. Following the traffic stop, the officers approached the Silverado and noted that there were two occupants – the driver (identified as Christopher Gray) and a passenger (identified as James). Tr. at 11.

6. After obtaining the identifications, the officers ran the names through the radio dispatch in their patrol car. Tr. at 11-12, 52.

7. With regard to James, a computer check revealed that he had multiple outstanding arrest warrants. Tr. at 12, 40, 52.

8. Upon receipt of the information regarding James' arrest warrants, Officer Coale asked the dispatcher to confirm the existence of the warrants for James and their continuing validity. Tr. at 12, 52.

9. The dispatcher confirmed to Officer Coale that James' warrants were active and valid. Tr. at 12, 52.

10. Officer Coale and Officer Stetzler then went back to the Silverado and advised James that he needed to exit the vehicle. Tr. at 13.

---

[1] Mr. Coale is presently a detective assigned to the Criminal Investigations Unit Gun Squad with the Independence Police Department. Mr. Stetzler is now an Acting Sergeant for the full-time SWAT team with the Independence Police Department. For purposes of this order, however, the Court will refer to Det. Coale and Sgt. Stetzler utilizing their 2016 police ranks.

11. Once the passenger door was opened, Officer Coale observed a black bag[2] sitting on James' lap that James began moving away from his person. Tr. at 13.

12. As James was exiting the Silverado, Officer Coale attempted to handcuff James by grabbing James' left hand. Tr. at 14.

13. James turned his body so that Officer Coale could not see James' right hand. Tr. at 14.

14. From his vantage point, Officer Stetzler could see James using his right hand to "fiddle around in his waistband or pocket area." Tr. at 41.

15. Officer Stetzler then saw a gun magazine hit the ground with a thud. Tr. at 41.

16. Eventually, Officer Coale was able to secure both of James' hands and place him in handcuffs. Tr. at 14-15, 43.

17. James was arrested due to the outstanding active arrest warrants.[3] Tr. at 21, 40.

18. Officer Stetzler told Officer Coale that he had seen a magazine from a firearm hit the ground as James was being removed from the Silverado and arrested but Officer Stetzler had not yet seen a firearm. Tr. at 30, 38, 42.

19. After James was removed from the passenger side of the Silverado, Officer Coale observed what he believed to be marijuana "shake" (seeds and stems) in the cabin of the vehicle. Tr. at 35-36.

20. Once James was moved away from the passenger door area of the Silverado, Officer Stetzler could see a gun in the door pocket of the wide-open passenger door of the Silverado. Tr. at 44, 53.

21. Officer Stetzler could also see the marijuana shake on the passenger side floorboard. Tr. at 45-46.

22. At that time, Officer Stetzler reached in and unzipped the black bag in the cab of the Silverado and saw narcotics. Tr. at 47-49, 57-58.

23. At around the same time, after completing the handcuffing of James, Officer Coale searched James' person. Tr. at 15.

24. Officer Coale then asked James: "Where's the gun?" Tr. at 25.

---

[2] The black bag was further described in the transcript as a fanny pack. Tr. at 15.

[3] The warrants concerned maintenance of a nuisance and failure to pay fines. Tr. at 22-23.

3

25. When James denied having a gun, Officer Coale told James: "Listen, you have one opportunity to be honest with me, and that's right now. Otherwise, I'm going to jam you up with everything I can." Tr. at 18.

26. James subsequently told Officer Coale that there was a gun by the passenger door and both the gun and black bag belonged to him. Tr. at 58; Gov't #1.

27. At that time, James had not been advised of his *Miranda* rights. Tr. at 15-16, 26, 38.

28. Subsequently, law enforcement officers learned that James was a convicted felon. Tr. at 28, 49.

29. Thereafter the gun seen in the passenger door side pocket was seized. Tr. at 33.

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, James seeks to challenge the seizure of the firearm at the scene of the arrest[4] and the search of the black bag (and subsequent seizure of illegal narcotics in the bag).

Without question, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted long ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

---

[4] James does not challenge the initial traffic stop itself which was justified based on an observed violation of traffic laws (operating a vehicle without proper license plates). Nor does James challenge his arrest which was constitutionally justified by his then-outstanding arrest warrants.

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, Officers Coale and Stetzler did not have a warrant to search the Silverado. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*citation omitted*).

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The rights protected by the Fourth Amendment were certainly implicated in this case by the decision of Officers Coale and Stetzler to stop the Silverado. *Delaware v. Prouse*, *supra*, 440 U.S. at 653, 99 S.Ct. at 652-53. To that end, as already noted, Officers Coale and Stetzler had the requisite reasonable suspicion to stop the Silverado when they were provided information that the vehicle was being operated without valid license plates. *See*, *e.g.*, *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) ("Any traffic violation, however minor, provides

5

probable cause for a traffic stop."). Not every proper *Terry* traffic stop, however, justifies the warrantless arrest of a driver. Again, however, in this case, the officers at the scene unquestionably had ample probable cause to arrest James based on outstanding arrest warrants.

Notwithstanding the validity of the initial stop and the arrest, however, with regard to the ensuing warrantless search of the Silverado, constitutional concerns must be further addressed because no search warrant was obtained prior to the search. The government, in this case, seeks to justify the search and eventual seizures under several different theories: (1) a search incident to the arrest, (2) plain view, (3) the automobile exception, and (4) a valid *Terry* frisk.

The Court rejects any argument that the searches conducted by Officer Stetzler can be justified as a search incident to arrest. Before 2009, the search of the Silverado might have been valid as a "search incident to an arrest." Prior to that date, the Eighth Circuit had generally concluded that if officers had probable cause to arrest a driver (or a passenger), the officers had the right to not only search the driver's person incident to the arrest, but also to search the passenger compartment of his vehicle. *United States v. Poggemiller*, 375 F.3d 686, 687 (8th Cir. 2004) ("Under [*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981)], when a police officer makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest.").

In 2009, however, the Supreme Court limited this broad exception to the warrant requirement when it issued its opinion in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009), and held that officers "may search a vehicle incident to a recent occupant's arrest <u>only</u> if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723 (*emphasis added*). *Gant* thus permits a warrantless search of a vehicle incident

6

to an occupant's arrest in only two circumstances. First, arresting officers are permitted to search the passenger compartment of a vehicle when an arrestee "is within reaching distance of the passenger compartment <u>at the time of the search</u>." In this case, James was not within reaching distance at the time of search of the Silverado. *Compare United States v. Webster*, 625 F.3d 439, 445 (8th Cir. 2010) ("the first prong of *Gant* clearly makes a search incident to arrest inapplicable in this case because [the defendant] was handcuffed and not within reaching distance of the passenger compartment" when the search was conducted).[5] The second application of *Gant* permits an officer to conduct a vehicle search incident to an arrest where "it is reasonable to believe the vehicle contains evidence of the offense of arrest." In this case, the Government has offered no evidence or argument to indicate that the Silverado was searched because of a belief that it contained evidence related to the crime for which James was initially arrested (*i.e*., the outstanding warrants).

---

[5] The Government's briefing on the argument for a search-incident-to-an-arrest is at best disingenuous, relying primarily on pre-2009 precedent. The government does cite to two post-2009 cases. In one [*United States v. Perdoma*, 621 F.3d 745 (8th Cir. 2010)], the Court acknowledged the Supreme Court's decision in *Gant* but found it did not apply in *Perdoma* because that case did not involve a vehicle search (a distinction wholly inapplicable herein). In the second case [*United States v. Hambrick*, 630 F.3d 742, (8th Cir. 2011)], the Government's brief quotes the Eight Circuit's language "that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *Id*. at 748. However, the Government does not note that the Court was referring to a search of an arrestee's person after he was taken to a station house for booking. More disturbingly, the Government's briefing to this Court completely fails to disclose that the Eighth Circuit in *Hambrick* rejected an argument for a search incident to an arrest with regard to the subject vehicle:

> We agree with the district court that the search of [the defendant's] vehicle was not incident to arrest under the strictures imposed by *Gant*. After his arrest, [the defendant] was handcuffed and placed in the back of a patrol car, and therefore he had no access to the vehicle at the time of the search.

*Id*. at 747.

With regard to the handgun seen by Officer Stetzler, the Government's argument for application of the plain view exception to the warrant requirement finds more traction. The plain view doctrine allows officers to seize an object without a warrant if:

(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,

(2) the object's incriminating character is immediately apparent, and

(3) the officer has a lawful right of access to the object itself.

*United States v. Collins*, 321 F.3d 691, 694 (8th Cir. 2003).

James argues that the incriminating character of the handgun was not immediately apparent because it was not until later that officers learned that James was a convicted felon (and therefore not permitted to be carrying a weapon). James' argument might have persuasiveness had Officer Stetzler seized the gun upon seeing it. He did not. The gun was seized later by crime lab technicians performing a search of the Silverado. At that point, the incriminating character of the gun was immediately apparent.[6]

---

[6] Inasmuch as the officer at the scene of the initial traffic stop did not seize the gun, the Court does not address the Government's additional argument – premised on officer safety considerations – that:

> [O]fficers may temporarily protectively seize a handgun in plain view so long as a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. . . . [A] police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety.

*United States v. Lewis*, 864 F.3d 937, 946 (8th Cir. 2017) (*citations and internal punctuation omitted*).

8

With regard to the black bag, however, additional analysis is required. While the drugs contained therein have an incriminating character that is immediately apparent, the drugs were not in plain view until Officer Stetzler opened the bag. Consequently, the dispositive constitutional question is whether Officer Stetzler was justified in unzipping the black bag.

The Government argues that the search of the bag was justified under the automobile exception. The "automobile exception" authorizes law enforcement officers "to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)). The Supreme Court has justified this departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility. *California v. Carney*, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 2069 (1985). Nonetheless, the Court has limited the scope of this potentially broad exception to the warrant requirement by requiring a showing of probable cause. In that regard, probable cause to search an automobile "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Palega*, 556 F.3d at 714. In this case, the government has shown – through the plain view of contraband (the gun and the marijuana shake) – sufficient evidence to meet the requirements for the automobile exception to apply.

> Probable cause is a practical and common-sensical standard that is based on the totality of the circumstances and requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act. Moreover, <u>[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search, including a passenger's personal belongings</u>.

*United States v. Murillo-Salgado*, 854 F.3d 407, 418, 2017 WL 1359478 (8th Cir. 2017) (*emphasis added*) (*citations and internal punctuation omitted*).

9

In the alternative, the Court finds that the search of the black bag can be justified as a "protective search" of a vehicle (what the Government's briefing refers to a "*Terry* frisk of the passenger compartment." While application of the "automobile exception" requires probable cause, this related doctrine of a protective search of a vehicle may be based on the lower threshold of reasonable suspicion. In *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480-81 (1983), the Supreme Court held:

> [P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id*. Moreover, in subsequently applying *Long*, the Eighth Circuit has found "once reasonable suspicion is established, a protective search of a vehicle's interior is permissible regardless of whether the occupants have been removed from the vehicle." *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011). Indeed, in *Long*, the Supreme Court itself specifically rejected an argument that a protective vehicle sweep was not reasonable inasmuch as the suspect "was effectively under [law enforcement] control during the investigative stop and could not get access to any weapons that might have been located in the automobile." *Long*, 463 U.S. at 1051, 103 S.Ct. at 3482. The Supreme Court found such reasoning "mistaken" inasmuch as:

> During any investigative detention, the suspect is "in the control" of the officers in the sense that he may be briefly detained against his will. Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing

10

> and retrieve a weapon, so might a Terry suspect in [the suspect's]
> position break away from police control and retrieve a weapon
> from his automobile. In addition, if the suspect is not placed under
> arrest, he will be permitted to reenter his automobile, and he will
> then have access to any weapons inside. Or, as here, the suspect
> may be permitted to reenter the vehicle before the Terry
> investigation is over, and again, may have access to weapons.

*Id*. at 1051-52, 103 S.Ct. at 3482.

Reckless application of the *Long* protective search rule has the potential to effectively eviscerate the general warrant requirement of the Fourth Amendment when a vehicle stop is undertaken by law enforcement officers. Unlike the limitations imposed on a valid "automobile search" and a "search incident to arrest," the *Long* protective search rule (like the *Terry* analysis) is constrained only by the reasonable suspicion requirement.

In this case, the government has offered argument that the officers at the scene of James' arrest held a suspicion that he had weapons in his vehicle. The evidence presented to the Court established:

(1) officers believed a handgun magazine fell from James' person when he was being removed from the Silverado, and

(2) a weapon was plainly observed in the pocket to the passenger door near where James was sitting.

In the interests of public and officer safety, the Court concludes that these facts would give an objectively reasonable officer sufficient suspicion to conduct a protective search of the Silverado. Inasmuch as the officers accordingly would have the right to look in the Silverado in "those areas in which a weapon may be placed or hidden," any contraband seen in plain sight (including the drugs inside the black bag) could be properly seized. To the extent that the government intends to use such seized evidence, it is not subject to suppression.

11

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** James' MOTION TO SUPPRESS EVIDENCE (Doc. #19) filed on December 17, 2019.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

      */s/ John T. Maughmer*
**John T. Maughmer
United States Magistrate Judge**